UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH J. PHELAN,

                                         Plaintiff,

          vs.                                              5:10-CV-724 (DNH/ATB)

CHUCK SULLIVAN,
et al,

                                         Defendants.
_____

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent the above complaint to me for review.  On June 21, 2010,
*pro se* plaintiff, Kenneth J. Phelan, filed this civil rights action, pursuant to 42 U.S.C.
§ 1983, together with an application to proceed *in forma pauperis* and a motion to
appoint counsel.  (Dkt. Nos. 1, 2, 3).

I.   **Complaint**

     A.   **Causes of Action**

     Plaintiff brings this action against Chuck Sullivan, New York State Police
("NYSP") Senior Investigator; Michael Reinohl, NYSP Investigator; Eric Leonard,
NYSP Investigator; Ann Kostecki, NYSP Investigator; Jim Conway, NYSP
Investigator; Matthew Rennerman, NYSP Officer; Nicole M. Lichva, NYSP Officer;
Lynda K. Rymanowski, NYSP Officer; Harry Corbitt, Superintendent, NYSP; Robert
Gavin, Times Union reporter; T. Tyler; R. Smith; Dean Delnegro, U.S. Immigration
Agent; Judge Wagner, Albany City Court Judge; City of Albany; Christina Calabrese,

Assistant District Attorney ("ADA"); and Nick Georgeadis, NYSP Investigator. (Compl. ¶ 3–18).[1]  Plaintiff alleges twenty-two "causes of action" in his complaint: (1) "Defendants Reinohl, Sullivan, Kostecki, Georgeads [sic], Leonard, Renneman, [and] Conway committed treason by breaking their sacred oaths of office, by intentional[l]y breaking the laws and [r]ights contained in the Constitution of the United [States] of America, and trampling all over it"; (2) "Defendants Renohl, Sullivan, Kostecki, [and] Leonard violated [p]laintiff['s] 4th Ame[n]d[ment] [r]ight by illegally arrest[ing] him in his home without a warrant, and without exigent circumstances"; (3) "Defendants Reinohl, Sullivan, Kostecki, [and] Leonard unlawfully imprisoned [p]laintiff"; (4) "Defendants Reinohl, Sullivan, Kostecki, Leonard, Georgeads [sic], Renneman, [and] Conway showed deliberate indifference to [p]laintiff's [r]ights, multiple times"; (5) "Defendants Reinohl, Calibrese [sic], Sullivan, Georgeads [sic], Sullivan, and Leonard maliciously prosecuted [p]laintiff"; (6) "Defendants Reinohl, Leonard, Georgeads [sic], and Sullivan violated [p]laintiff's 4th Amend. [r]ight by unlawfully seizing property, multiple times"; (7) "Defendants Reinohl, Leonard, Georgeads [sic], Sullivan, Conway, and members of the Watervliet P.D. used excessive force during illegal arrest"; (8) "Defendants Reinohl, Georgeads [sic], Sullivan, [and] Leonard violated due process [r]ights of [p]laintiff, by unlawfully arresting and stealing [p]laintiff's property not authorized by warrant, multiple times"; (9) "Defendants

---

[1] Plaintiff did not number all of the pages attached to his complaint listing additional defendants and continuing the "Facts" section of paragraph 6.  For clarity, the court will refer to information by paragraph number, if possible, and then by page number, beginning with page one of the complaint and continuing consecutively.

Reinohl, Leonard, Conway, Sullivan, Kostecki, and Georgeads [sic] showed evil intent, and malicious intent towards [p]laintiff"; (10) "Defendants Lichva and Rymanowski violated [p]laintiff's 4th Amend. [r]ight by accepted [sic] stolen property"; (11) "Defendants Lichva and Rymanowski violated [p]laintiff's 4th Amend. [r]ight by accepting stolen property"; (12) " S/A Delnegro violated [p]laintiff's due process [r]ights by sharing confidential information with defendant Reinohl, and broke HIPAA Laws, and equal protection rights"; (13) "Defendant Wagner violated [p]laintiff's [r]ight to bail, by den[y]ing bail"; (14) "Defendant City of Albany illegally imprisoned [p]laintiff as a matter of routine and policy"; (15) "Defendant City of Albany was deliberately indifferent towards [p]laintiff by unlawfully taking away [p]laintiff's [r]ight to medical treatment for [a] severe migraine he got as a result of having his eye glasses taken away"; (16) "Defendant Gavin defamed and slander[e]d [p]laintiff's good name by writing and publishing a story about [p]laintiff in the Times Union newspaper full of lies and violating [p]laintiff's [r]ight to due process, and equal protection"; (17) "Defendant City of Albany violated [p]laintiff's due process [r]ights as routine policy, and equal protection"; (18) "Defendant Corbitt created a policy or custom under which these Constitutional violations took place and allowed them to continue and was grossly negligent in managing subordinates"; (19) "Defendant Reinohl maliciously prosecuted [p]laintiff for filing a false report, and three counts of Agg. harrassment [sic] even though defendant Reinohl had abolut[e]ly no evidence, and no probable cause to press these malicious and slanderious [sic] charges[, t]he [g]rand [j]ury did not indict on these charges[, d]efendant Reinohl was

3

in pos[s]ession of a documented email from a P.I.,[2] addressed to [p]laintiff stating an immigrant, Jane Quinsaat, was using a stolen Social Security No. and date of birth[, p]laintiff mer[e]ly reported this in good faith to defendant Reinohl[, t]his email is proof [p]laintiff is not guilty of filing a false report[, d]efendant Reinohl maliciously hid this and filed these false charges against [p]laintiff with evil [i]ntent"; (20) "Defendant Tyler defamed and slander[e]d [p]laintiff's good name by allowing a story about [p]laintiff that was 95% lies [sic] be printed in the Times Union newspaper and their website, violating [p]laintiff's 14th and 5th Amendment rights"; (21) "Defendant Smith defamed and slandered [p]laintiff by failing to properly supervise staff to ensure they follow policies, violating [p]laintiff's 14th Amend. right"; and (22) "Defendants violated [p]laintiff's Constitutional rights by coming to 'visit' [p]laintiff about case to threaten, harass, bagger [sic] [p]laintiff and to cause harm and write up [p]laintiff, to intimatate [sic] violating, 1st[,] 5th[,] 8th[,] and 14th Amendments."  (Compl. ¶ 70c, pp. 22–27a).[3]  Plaintiff requests declaratory relief, a judgment in his favor, billions of dollars in damages, injunctive relief of various kinds against various defendants, and attorney's fees plus costs.  (Compl. ¶ 69, pp. 28–33).

### B.   Alleged Facts

Plaintiff alleges that on July 1, 2008, the Albany police investigated a complaint against plaintiff for sending "threatening emails" to Jane Quinsaats, and concluded

---

[2] Private Investigator.

[3] Plaintiff has numbered his paragraphs and pages, but his numbering system, includes duplications of page numbers and paragraph numbers.  For ease of reference and clarity, the court will refer to material by paragraph and page number, as plaintiff has labeled them.

4

that "no crime had been committed." (Compl. ¶ 21). Two weeks later, plaintiff alleges that defendant Conway and Kostecki used "false information" and "another man's arrest record and name" in their application for a search warrant. (Compl. ¶¶ 22–23). On July 17, 2008, plaintiff alleges that state police approached his apartment wearing bulletproof vests with their guns drawn. (Compl. ¶ 25). Defendants Reinohl, Leonard, Kostecki, Sullivan, Georgeadis, and Conway allegedly "picked the doorlock" of the apartment building and then knocked "only once" and broke down plaintiff's door with a battering ram. *Id.* Plaintiff, who was sitting on the couch, was tackled face-down, handcuffed, "read his [r]ights," and arrested. *Id.* When plaintiff asked why he was being arrested, defendant Sullivan responded that he was being arrested for "filing a false report, probably more," and that the arrest warrant was "at the station." (Compl. ¶ 26).

Plaintiff alleges that defendants Sullivan and Reinohl questioned him while defendants Leonard, Kostecki, Conway, and Georgeadis "ransacked" his apartment, after which they put him in the police car and took him to the state police barracks in Loudonville. (Compl. ¶¶ 27–30). Plaintiff also alleges that defendants Leonard, Georgeadis, and Conway exceeded the authority of the search warrant by seizing more than the "authorized computer related items" and "stole a lot more priv[a]te property," which was later in the possession of different defendants. (Compl. ¶¶ 31–33, 36–38, 40–42, 44, 46, 48).[4] Plaintiff alleges that after he was "booked, photographed and

---

[4] Plaintiff refers throughout his complaint to property by item number, but gives no explanation as to what the system of numbering is, or to what property most of the numbers refer. Because the numbering is irrelevant to the court's analysis, the numbering has been disregarded,

5

fingerprinted," defendant Reinohl refused to allow plaintiff to call his attorney and "hid [p]laintiff's attorney's phone [number] from plaintiff" and "bribed" plaintiff with a soda and sandwich to talk.  (Compl. ¶ 30).  This interrogation was later the subject of a "false record" used against plaintiff at trial.  (Compl. ¶ 58).  Plaintiff asked to see the arrest warrant, and defendant Reinohl allegedly responded that "they don't need an arrest warrant to arrest you in your home."  *Id.*

Later that night, plaintiff alleges that he was taken to the "South Station lockup," where defendant "City of Albany unlawfully imprisoned [p]laintiff and took away [p]laintiff's eyeglasses," causing him to get a "severe migraine" and was "not allowed medical treatment."  (Compl. ¶ 34).  Defendants Reinohl, Sullivan, and Kostecki allegedly did not "allow" plaintiff to see a judge before "unlawfully" imprisoning him.  (Compl. ¶ 35).

Plaintiff appeared before Judge Wagner on July 18, 2008, and was arraigned on one count of Reporting a False Incident, one count of Criminal Contempt, four counts of Aggravated Harrassment, with Judge Wagner denying plaintiff's "[r]ight to bail. (Compl. ¶ 39).  A few days later, on July 21, 2008, defendants Kostecki, Delnegro, and Reinohl "intercepted [p]laintiff's imigrant fiancée at Albany Airport . . . for no reason whatsoever, except to show evil intent towards [p]laintiff."  (Compl. ¶ 43).

On July 23, 2008, plaintiff alleges defendant Reinohl "tampered" with plaintiff's rolodex (which had been previously seized as evidence), "fraudulently

---

and when plaintiff has actually identified the item by name, the court has referred to it only by the name used by plaintiff.

adding evidence." (Compl. ¶ 45). A few days later, on July 28, 2008, plaintiff alleges defendant Delnegro "violated HIPPA laws" and plaintiff's "due process [r]ights" when he agreed to get an original immigration application plaintiff sent to the U.S. Embassy in the Phillipines. (Compl. ¶ 47). Plaintiff alleges defendant Renneman, a supervisor, learned of the "false arrest, unlawful imprisonment, and malicious prosecution," of plaintiff when defendant Renneman received written reports from defendant Reinohl and "did nothing to stop the unconstitutional actions of defendants Reinohl, Sullivan, Leonard, Kostecki, Georgeads [sic], and Conway" because it was "policy or custom to allow violations of [constitutional] law." (Compl. ¶ 49, 57, 63). Defendant Corbitt also contributed to creating this policy or custom and allowed it to continue. (Compl. ¶ 66).

On August 4, 2008, plaintiff alleges another illegal search was conducted by defendant Reinohl, who stole property from plaintiff's home, and with defendant Georgeads [sic], authorized another investigator to search someone else's attic to "maliciously persecute [p]laintiff." (Compl. ¶¶ 50–51). Over the next two days, plaintiff alleges defendants Reinohl and Sullivan, in conjunction with the Saratoga Sheriff's Department, tried to connect plaintiff with the Christina White murder by using a newspaper article and other evidence "illegally seized" from plaintiff. (Compl. ¶ 52–53). This evidence was later in the possession of defendants Sullivan, Rymanowski, and Reinohl. (Compl. ¶¶ 54–56).

Plaintiff was indicted by a grand jury for "violating a fraudulent order of protection," two counts of first degree Criminal Contempt, one count of aggravated

7

harassment, and stalking on September 18, 2008, after defendant Reinohl allegedly ignored exculpatory information from a private investigator and instead used "fraudulent evidence and testimony," a "fraudulent order of protection," and "fraudulent record of 'minutes' of intarigation [sic]." (Compl. ¶¶ 59–60. Plaintiff was later charged with identity theft in the first degree and brought again before a grand jury and confronted with "fraudulent information" on September 30, 2008.

Later, on February 5–7, 2009, defendants Calibrese [sic], Reinohl, and Georgads [sic] allegedly provided "fraudulent information" and "using stolen property from [p]laintiff's home" to maliciously prosecute plaintiff. (Compl. ¶ 64). Plaintiff alleges that one month later, defendant Gavin wrote a story in the Times Union newspaper that was "full of lies," "slanderis [sic]," and "defamitory [sic], which defendant Tyler printed, and defendant Smith permitted by failing to properly supervise staff at the newspaper." (Compl. ¶ 65, 68, 69).

## C.    Relief Requested

Plaintiff seeks billions of dollars in damages, attorneys fees of $200,580.00,[5] and broad declaratory and injunctive relief. (Compl. ¶¶ 69, pp. 28–33).

## II.    *In Forma Pauperis* ("IFP") Review

Plaintiff has filed an application to proceed IFP. (Dkt. No. 2). Pursuant to 28 U.S.C. § 1915(a)(1), the court may authorize the commencement, prosecution, or defense of any suit, action or proceeding without the pre-payment of fees. The

---

[5] This is apparently for fees incurred in plaintiff's case in state court, as he is not represented by an attorney in this court and has filed a motion to appoint counsel. (Dkt. No. 3).

individual seeking permission to proceed IFP must file an affidavit which includes a statement of all assets, showing that the individual is unable to pay the fees or give security therefor. *Id.* The same section, however, states that this determination is "subject to subsection (b)." *Id.* Subsection (e) provides that notwithstanding any filing fee or portion of the fee that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue, or the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). To avoid dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke*, 490 U.S. at 325. The Court will now turn to a consideration of the plaintiff's complaint under the above standards.

**IV.**   **Discussion**

### A.    Judicial Immunity

Plaintiff names Judge Wagner as a defendant.  Plaintiff seeks "declaratory judgment for Judge Wagner saying it is illegal to deny bail in court for non-capital crime cases, and/or my case" and for injunctive relief directing Judge Wagner "that New York Statues [sic] that deny bail to defendants with two felonies on their record are illegal, and all [j]udges must grant reasonable bail in City of Albany Courts, within 4 hours of arrest, for non-capital crime cases."  (Compl. ¶ 69, p. 29).  "It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction."  *Miller v. County of Nassau*, 467 F. Supp. 2d at 312 (citing *Mireles v. Waco*, 502 U.S. 9, 9–12 (1991)).  Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004).

The Supreme Court has stated that the scope of a judge's "jurisdiction" is construed broadly, and the judge will not be deprived of immunity "because the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority." *Stump v. Sparkman*, 435 U.S. 349, 356–57.  Rather, the judge will be subject to liability only when he or she acted "in the clear absence of all jurisdiction." *Id.*  Immunity is only overcome if the challenged action was not taken in the judge's judicial capacity or if the judge acted in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).  Whether an act is "judicial" relates to the nature of the act itself.  *Id.*  The first question is whether the function is one "normally

10

performed by a judge." *Id.*  The second question is whether the parties dealt with the judge in his or her judicial capacity.  *Id.* (citations omitted).

In this case, there is no indication that Judge Wagner had any contact with plaintiff other than as a judge presiding over plaintiff's criminal case, an act normally performed by a judge within his jurisdiction.  Plaintiff's allegation that Judge Wagner should not have denied plaintiff's "right" to bail does not state a claim under § 1983. *Stump v. Sparkman, supra*.  Accordingly, plaintiff's damage claims against Judge Wagner should be dismissed.

It is also well-settled that the absolute immunity accorded to judges bars any claim for damages, but also bars claims for injunctive relief.  *See Montrero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).  This absolute immunity does not bar claims for prospective injunctive relief, but absent an allegation of a violation of a prior declaratory decree, it is not available under § 1983.  *See Jacobs v. Mostow*, 271 Fed. Appx. 85, 88 (2d Cir. 2008).  Plaintiff has made no allegations that satisfy this exception.  Accordingly, plaintiff's claims for injunctive relief against Judge Wagner should also be dismissed.

### B.    Prosecutorial Immunity

Plaintiff also names Assistant District Attorney ("ADA") Calabrese as a defendant. ADA Calabrese is apparently the ADA who prosecuted plaintiff's criminal case.  Like judges, prosecutors also enjoy absolute immunity from suit under § 1983 in matters associated with their prosecutorial functions, regardless of motivation.  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts

associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to § 1983 for their alleged malicious or selective prosecution, as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502–03 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his decision not to prosecute, regardless of the motivation for his or her decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

In this case, plaintiff only alleges that defendant Calabrese, along with defendants Reinohl and Georgeadis, "maliciously prosecuted" plaintiff. Plaintiff only discusses defendant Calabrese's alleged actions before the jury. Thus, plaintiff asserts no basis for a claim against defendant Calabrese.

### C.    Color of State Law

To state a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Here, defendants Gavin, Tyler, and Smith are alleged writers, editors, and employees of the *Times Union* newspaper. (Compl. ¶¶ 65, 68–69). Private newspapers do not act under color of state

12

law when publishing newspaper articles. *Brown v. Rehnquist*, No. 00 CV 7182, 2002 WL 32394848, at *4, 2002 U.S. Dist LEXIS 27771, at *14 (E.D.N.Y. May 1, 2002) (citing *Idema v. K. Wagner*, 120 F. Supp. 2d 361, 369 (S.D.N.Y. 2000)). Because defendants Gavin, Tyler, and Smith did not act under color of state law when the *Times Union* published the story about plaintiff, his claims against defendants Gavin, Tyler, and Smith should be dismissed.[6]

### D.    No Private Right of Action Under HIPAA[7]

Plaintiff alleges that defendant Delnegro violated plaintiff's due process rights by sharing confidential information and "broke HIPAA laws." (Compl. ¶ 70c pp. 25). The HIPAA was enacted to protect against unwarranted disclosure of health records and information, and authorizes the Secretary of Health an Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Williams v. Perlman*, No. 9:06-CV-936, 2009 WL 1652193, at *12, 2009 U.S. Dist. LEXIS 50793 (N.D.N.Y. Feb. 9, 2009) (citing *Barnes v. Glennon*, No. 05-CV-153, 2006 WL 2811821, at *5, 2006 U.S. Dist. LEXIS 70364 (Sept. 28, 2006)) (adopted in part, rejected in part, 2009 WL 1652188, 2009 U.S. Dist. LEXIS 50788

---

[6] Plaintiff also claims that the newspaper story was defamatory, slanderous, violated his "right to due process, and equal protection," along with invoking the 14th and 15th Amendments. (Compl. ¶¶ 70c, pp. 26, 27a). To the extent plaintiff alleges a claim based on equal protection, it should be dismissed for failure to state a claim, because he fails to allege that he was treated any differently than others similarly situated. *See Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996) (under the theory of "selective enforcement," a plaintiff must allege that he or she was treated differently than from others similarly situated); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (under the theory of "class of one," a plaintiff must allege that he or she was treated differently than others similarly situated).

[7] Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320 *et seq.*

(N.D.N.Y. Jun. 10, 2009). "No where does [HIPAA], either explicitly or implicitly, confer to private individuals a right of enforcement." *Barnes*, 2006 WL 2811821, at *5, (citing *inter alia University of Colorado Hosp. v. Denver Pub. Co.*, 340 F. Supp. 2d 1142, 1144–45 (D. Colo. 2004) ("[no] section of HIPAA contains any language conferring privacy rights upon . . . any specific class of persons . . . the statutory text displays no intent to create a private right of action"). Plaintiff alleges that defendant Delnegro shared "confidential" information, but gives no indication of what type of information was shared, or if it was health information. (Compl. ¶ 47). Plaintiff's allegations are far from clear, but to the extent plaintiff attempts to allege a cause of action under HIPAA, it should be dismissed as futile.[8]

### E.    Due Process

To state a successful procedural due process claim, a plaintiff must establish that he or she was deprived of a property interest or a liberty interest without constitutionally sufficient process. *Hogan v. A.O. Fox Mem. Hosp.*, 346 Fed. Appx. 627, 629–30 (2d Cir. 2009) (citing *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)). The majority of plaintiff's claims related to due process involve what he calls "stolen property," taken during different searches of his apartment. (*See* Compl. ¶¶ 31–33, 36, 40, 42, 48, 55). Plaintiff bases these claims on the allegation that defendants seized

---

[8] Plaintiff alleges in his twelfth cause of action that defendant Delnegro "violated [p]laintiff's due process [r]ights . . . and broke HIPAA laws, and equal protection rights." This is the only time plaintiff mentions equal protection in conjunction with defendant Delnegro. Plaintiff does not mention equal protection in either of the two paragraphs of his complaint that mention defendant Delnegro. (*See* Compl. ¶¶ 43, 47). To the extent plaintiff alleges a claim based on equal protection, it should be dismissed for failure to state a claim, because he fails to allege that he was treated any differently than others similarly situated. *See* note 6, above.

property "not authorized" by search warrant or more than was authorized by search warrant. *Id.*

The Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently or intentionally deprives an individual of property, if "the state makes available a meaningful postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  As to property seized pursuant to a search warrant, adequate post-deprivation remedies likewise satisfy due process.  *See Malapanis v. Regan*, 335 F. Supp. 2d 285, 293 n.5 (D. Conn. 2004).

New York law provides several remedies for property owners to recover property seized pursuant to a search warrant.  A criminal defendant may move to suppress unlawfully seized property, and the suppression court may order that the seized property be returned.  *See* N.Y. Crim. Proc. Law § 710.70.  If no suppression motion is made, a criminal defendant may move the court that issued the warrant to return the property.  *See* N.Y. Crim. Proc. Law § 690.55; *Matter of Moss v. Spitzer*, 19 A.D.3d 599 (2d Dep't 2005) ("property seized pursuant to a search warrant remains in the control of the issuing judge").  When no criminal prosecution is pending, a property owner can file an action for replevin or commence a proceeding pursuant to N.Y. Civil Practice Law and Rules article 78 to "review a refusal after demand." *Boyle v. Kelley*, 42 N.Y.2d 88, 91 (1977).  With these state-law post-deprivation remedies providing adequate process for plaintiff to assert his property rights, plaintiff cannot establish a violation of his federal due process rights. Plaintiff alleges that defendants Lichva and Rymanowski "received" and "posessed" [sic] "stolen property .

15

. . not authorized by warrant" in connection with his due process claims, which should be dismissed, as discussed above.  (Compl. ¶¶ 42, 55).  Plaintiff only mentions defendants Lichva and Rymanowski in connection with his due process claims, so the complaint should be dismissed in its entirety as to defendants Lichva and Rymanowski.

   Plaintiff also alleges that his due process rights were implicated because defendant Delnegro "shared confidential information," "agreed to get the original immigration application from U.S. Embassy in Philippines that plaintiff sent." (Compl. ¶ 47).  Plaintiff adds that there "was no warrant for such," and to the extent plaintiff is alleging a due process claim based on the seizure of property, his argument fails, as discussed above.

   However, plaintiff may be attempting to assert a claim based on his substantive due process right to privacy involving his "interest in avoiding disclosure of personal matters."  *See Whalen v. Roe*, 429 U.S. 589, 599.  This interest is often characterized as a "right to confidentiality."  *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005).  To establish a violation of his constitutional right to privacy, plaintiff must establish that he had a "reasonable expectation of privacy" in the information that was disclosed.  *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977); *Sean R. v. Bd. of Educ.*, 794 F. Supp. 467, 469 (D. Conn. 1992).  Plaintiff does not describe the "confidential information" that was allegedly shared by defendant Delnegro with defendant Reinohl.  It appears it may be related to an immigration application plaintiff sent to the U.S. Embassy in the Philippines, presumably for his immigrant fiancée.

(Compl. ¶ 70). Plaintiff has failed to allege any facts establishing the violation of any constitutional right to privacy beyond the conclusory allegation that defendant Delnegro[9] "shared confidential information regarding [plaintiff] . . . [and] violated [plaintiff's] due process [r]ights."

Plaintiff's final due process claims appear to be made on behalf of his "immigrant fiancée," and related to her being "intercepted" at the Albany Airport. (Compl. ¶ 43). "The 'irreducible constitutional minimum' of standing requires, *inter alia*, 'that the *plaintiff* has suffered an injury in fact . . . .'" *Adeyola v. Gibbon*, 537 F. Supp. 2d 479, 480 (W.D.N.Y. 2008) (quoting *Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183, 191 (2d Cir. 2002)). Plaintiff would only be able to assert the claims of a third party if he could demonstrate: "(1) injury to the plaintiff; (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights; and (3) 'some hindrance to the third party's ability to protect his or her own interests.'" *Id.* (citing *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998). Plaintiff here has failed to establish any of the required elements. Any existing controversy would exist between his immigrant fiancée and the defendants. Plaintiff lacks standing to assert these § 1983 claims on behalf of his immigrant fiancée. In accordance with the above discussion, plaintiff's claims based on due process should be dismissed.

---

[9] The court is aware that defendant Delnegro, as an alleged U.S. Immigration Agent, is an employee of the federal government, and thus not subject to suit under § 1983. Civil rights claims against federal employees should be brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388. However, because this court is recommending dismissal of plaintiff's claims as to defendant Delnegro, analysis under *Bivens* is unnecessary.

### F.    Pattern and Practice

"In a § 1983 action against a municipality, the plaintiff must establish that 'he was unconstitutionally treated and that the constitutional violation resulted from an identified policy, custom, or practice of the municipality.'" *Mackey v. Property Clerk of N.Y. City Police Dep't*, 26 F. Supp. 2d 585, 590 (citing *Williams v. New York City Police Dep't*, 930 F. Supp. 49, 54 (S.D.N.Y. 1996); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  A claim under § 1983 against a municipality cannot be based on the theory of respondeat superior.  *Monell*, 436 U.S. at 691.  A plaintiff must demonstrate that the government official who violated plaintiff's constitutional rights did so because of a municipality's policy.  *Id.* at 694.  The only allegation plaintiff makes against defendant City of Albany is that plaintiff was "denied treatment for severe migraine he got as a result of having his eyeglasses taken away." (*Compl.* ¶ 70c, p. 25).  Because plaintiff failed to establish any policy, custom, or practice of the City of Albany, his claims as to the City of Albany should be dismissed.

### G.    Malicious Prosecution

A claim for malicious prosecution requires plaintiff to establish four elements: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in [plaintiff's] favor." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  Plaintiff makes no allegations that the matter terminated in his favor.  His current address at the Auburn Correctional Facility

appears to argue against that conclusion.  Therefore, plaintiff's claims based on

malicious prosecution should be dismissed.

### H.    Excessive Force and Wrongful Arrest

Plaintiff alleges that when he was arrested, defendants Reinohl, Leonard,

Kostecki, Sullivan, Georgeadis, and Conway used excessive force when they "tackled

[p]laintiff, throwing him [on] to the floor face down . . . [with] one foot on [p]laintiff's

neck, and four knees on [p]laintiff's back . . . harshly twisting [plaintiff's] arms[,]

almost breaking one, till [sic] [p]laintiff was handcuffed."  (Compl. ¶ 25).  Plaintiff

also alleges he was wrongfully arrested.  Plaintiff's wrongful arrest may be non-

cognizable under *Heck v. Humphrey*, 512 U.S. 477 (1994); however, more facts are

needed to make that determination.  *See Fifield v. Barrancotta*, 353 Fed. Appx. 479,

481 (2d Cir. 2009) (remanding to the district court to determine the applicability of

*Heck* to the appellant's Fourth Amendment claims).[10]  Thus, plaintiff has successfully

---

[10]  Under *Heck v. Humphrey*, a section 1983 suit for damages that "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence" is not cognizable, unless the plaintiff can show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 487.  Fourth Amendment claims for unlawful arrest do not ordinarily fall within the *Heck* rule, because a finding for the plaintiff would not necessarily "demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," *id.*, at least unless the conviction was dependent on evidence obtained as a result of the arrest.  *See Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir.1999).  A finding that an arrest was made without probable cause, or that a warrantless entry into the home was made to effect an arrest, would not necessarily call into question the validity of a plaintiff's eventual conviction unless the evidence underlying the conviction was the fruit of such unlawful actions.  This claim cannot be dismissed based on *Heck* because the factual record is insufficient to determine whether anything obtained as a result of the allegedly unlawful arrest was essential to plaintiff's apparent conviction.

met the minimal standard of stating a claim based on excessive force and wrongful arrest, and his claims based on these theories of recovery remain.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[11] and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** against defendants **GAVIN, TYLER, SMITH, DELNEGRO, WAGNER, LICHVA, RYMANOWSKI, and CALABRESE**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** to the extent that it can be read to allege any claims directly against **CITY OF ALBANY**, and it is

**ORDERED**, that the Clerk shall issue summonses and forward them, along with a copy of the complaint, and a copy of this Order to the United States Marshal for service on defendants Sullivan, Reinohl, Leonard, Kostecki, Conway, Renneman, Corbitt, and Georgeadis, and it is

**ORDERED**, that a formal response to plaintiff's complaint be filed by defendants Sullivan, Reinohl, Leonard, Kostecki, Conway, Renneman, Corbitt, and Georgeadis or their counsel as provided for in the Federal Rules of Civil Procedure,

---

[11] Plaintiff should note that although the application to proceed IFP has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

and it is

ORDERED, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **Any letter or other document received by the Clerk or the Court which does not include a certificate of service, clearly stating that an identical copy was served upon all opposing parties or their attorneys, may be stricken from the record**.

Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action and shall keep the court and opposing counsel apprised of any change of address. All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

ORDERED, that the Clerk serve a copy of this Order upon plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 7, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge

21