UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH J. PHELAN,

                              Plaintiff,

      -v-                                                  5:10-CV-724

CHUCK SULLIVAN, N.Y.S.P. Senior
Investigator, individually and in his official
capacity; MICHAEL REINOHL,[1] N.Y.S.P.
Investigator, individually and in his official
capacity; ERIC LEONARD, N.Y.S.P.
Investigator, individually and in his official
capacity; ANN KOSTECKI,  N.Y.S.P.
Investigator, individually and in her official
capacity; JIM CONWAY, N.Y.S.P. Investigator,
individually and in his official capacity; NICK
GEORGEADIS, N.Y.S.P. Investigator,
individually and in his official capacity;
MATTHEW RENNERMAN, N.Y.S.P. officer
with the rank of Major, individually and in his
official capacity; and JOHN P. MELVILLE,
Acting Superintendent of N.Y.S. Police Dept.,
individually and in his official capacity (f/k/a
Harry Corbitt);

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

KENNETH J. PHELAN
Plaintiff, Pro Se
09-A-1183
Five Points Correctional Facility
Caller Box 119
Romulus, NY  14541

---

[1]  According to this defendant's declaration, the proper spelling of his last name is "Reinoehl."
Therefore, this is the spelling that will be used.

HON. ERIC T. SCHNEIDERMAN                    ROGER W. KINSEY, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY  12224
DAVID N. HURD
United States District Judge

### MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Kenneth J. Phelan ("plaintiff" or "Phelan") filed this civil rights action on June 21, 2010, asserting twenty-two causes of action pursuant to 42 U.S.C. § 1983 against seventeen defendants.  After reviewing the complaint and considering plaintiff's in forma pauperis application, United States Magistrate Judge Andrew T. Baxter submitted a Report–Recommendation urging dismissal of nine defendants and numerous causes of action.  Phelan v. Sullivan, 2010 WL 2948217, at *9 (N.D.N.Y. July 7, 2010).  This Report–Recommendation was adopted in its entirety.  Phelan v. Sullivan, 2010 WL 2948188, at *1 (N.D.N.Y. July 22, 2010) (noting that no objections to the Report–Recommendation had been filed).

The remaining eight defendants include the following members of the New York State Police ("NYSP"):  Chuck Sullivan, Senior Investigator ("Sullivan"); Michael Reinoehl, Investigator ("Reinoehl"); Eric Leonard, Investigator ("Leonard"); Ann Kostecki, Investigator ("Kostecki"); Jim Conway, Investigator ("Conway"); Nick Georgeadis, Investigator ("Georgeadis"); Matthew Rennerman, Major ("Rennerman"); and John P. Melville, Acting Superintendent (collectively "defendants").  The parties apparently agree that the only remaining causes of action are false arrest, excessive force, and illegal seizure of personal property—all arising from Phelan's arrest and the seizure of his property on July 17, 2008.

Indeed, these are the only three claims addressed in plaintiff's memorandum of law.

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiff opposes and has filed a cross-motion for summary judgment. Defendants have responded.  The motions were considered on submit.

## II. <u>FACTUAL BACKGROUND</u>

Unless otherwise noted, the following pertinent facts are undisputed.  On July 11, 2008, the New York State Governor's office forwarded a complaint to the NYSP.  The complaint had been submitted via email by a person named "Kevin Phelps," who alleged that a Jane Quinsaats ("Jane") was in the United States illegally and requested an inquiry into her immigration status.  Reinoehl began an investigation and quickly learned that Jane had a valid New York driver's license, a valid Social Security number, and was legally in the United States.  Reinoehl also learned that Jane had recently obtained an order of protection against Kenneth Phelan as a result of a harassment charge in Albany.

Further investigation revealed that the email address used to send the complaint to the Governor's office was linked to Phelan.  On July 14, 2008, Reinoehl sent an email to this email address requesting a conversation and, shortly thereafter, received a phone call from a man claiming to be Kevin Phelps.  Reinoehl recorded part of the conversation, in which the man repeated the allegations against Jane.

Reinoehl then discovered a website maintained by an organization called "Citizens Against Illegal Immigrants," which named Jane as an illegal resident of Albany using a stolen identity.  The president of this organization was listed as "Ken Butler," and a picture of him appeared on the organization's website.  Leonard, who was personally familiar with plaintiff, identified the man in the picture as Phelan. On July 15, 2008, Reinoehl interviewed Jane,

who reported that plaintiff had stalked her in the past and had recently sent her an email threatening to have her deported.  She further claimed that an unidentified person using an unfamiliar email address had sent two threatening emails to her on July 1, 2008—the same day she was granted an order of protection against plaintiff.  Jane also identified Phelan as both the voice on the "Kevin Phelps" recorded phone call and the man in the "Ken Butler" picture.

In the meantime, Kostecki, Leonard, and Conway completed a criminal history check on Phelan and reportedly learned that he had been arrested in Colonie, New York, in 2002. The arrest report indicated that plaintiff had threatened someone with a dagger, kicked an officer, and attempted to pull the service weapon from the holster of another officer.  The records also revealed that when Phelan was arrested in Colonie, he provided the police with an assumed name of a deceased California man and the social security number of a New Hampshire man.  Plaintiff denies this criminal history.

On July 17, 2008, Reinoehl obtained a search warrant, signed by a City of Watervliet Judge, for Phelan's residence.  On that same date the warrant was executed by Reinoehl, Leonard, Kostecki, Sullivan, Georgeadis, Conway, and members of the Watervliet Police Department.  Defendants acknowledge using force to open the door to plaintiff's apartment but claim that they first identified themselves, advised that they had a search warrant, and repeatedly asked plaintiff to open the door.  Plaintiff alleges that defendants broke the door down without any warning.  Phelan was found sitting on the couch approximately six to ten feet away from the front door.  Plaintiff alleges that he was then forcibly thrown to the floor, several officers put their feet and knees to his back, and his arms were painfully twisted

behind his back.  Plaintiff was handcuffed and advised of his <u>Miranda</u> rights.[2]

Reinoehl then interviewed Phelan, who admitted to emailing the complaint to the Governor's office under the name Kevin Phelps.  Defendants proceeded to search the home and seized various items.  Defendants assert that plaintiff consented to a further search of his home, beyond the scope of the search warrant.  Phelan disputes this and claims that he only agreed to permit the seizure of his passport, some knives, and a hairbrush.  Elsewhere in his motion paperwork, however, Phelan denies that he authorized the search and seizure of any additional places or items, and he maintains that his signature on a voluntary consent to search form is a forgery.

Phelan was placed under arrest and transported to the Albany Police Department. The following day he was arraigned on charges of criminal contempt of an order of protection, aggravated harassment, and falsely reporting an incident.  According to defendants, a suppression hearing was conducted in December 2008, and an Albany County Court judge ruled that plaintiff's statements and all items seized from his home were admissible at trial.  In January 2009 Phelan was found guilty of criminal contempt of an order of protection, aggravated harassment, and stalking, and was sentenced to two to four years in prison.[3]  <u>See People v. Phelan</u>, 82 A.D.3d 1279, 1280 (N.Y. App. Div. 3d Dep't), <u>leave</u>

---

[2]  The parties dispute whether two knives were located close to plaintiff when defendants entered the apartment.

[3]  The parties also detail a separate incident involving Phelan's fiancee, who was reportedly intercepted at the Albany Airport in late July 2008.  An investigation ultimately led to a second search of plaintiff's home by defendants, pursuant to a search warrant.  Criminal charges were lodged against plaintiff for allegedly forging his fiancee's immigration paperwork and stealing the identity of a Vermont police officer. Plaintiff disputes several facts related to this incident and investigation, but acknowledges that he eventually pleaded guilty to forgery.  However, the three remaining causes of action only pertain to the July 17, 2008, arrest of Phelan and the seizure of his property on that date.  Therefore, any facts related to the later incident involving his fiancee's immigration documents are irrelevant and will not be discussed further.

denied, 17 N.Y.3d 799 (2011).

## III.  DISCUSSION

Plaintiff alleges that on July 17, 2008, defendants subjected him to a false arrest, employed excessive force against him, and illegally seized his personal property.

### A.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Id. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.

Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Defendants' Motion for Summary Judgment

#### 1. False Arrest

Phelan claims defendants subjected him to a false arrest by placing him under arrest on July 17, 2008, without an arrest warrant.  Defendants argue that they had probable cause to arrest plaintiff, who was ultimately convicted of the crimes for which he was arrested.

The elements of a § 1983 claim for false arrest "are substantially the same as the elements of a false arrest claim under New York law." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted); see also DeMeo v. Kean, 754 F. Supp. 2d 435, 443 (N.D.N.Y. 2010).  Under New York law, the elements of a false arrest claim are:  "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Singer, 63 F.3d at 118 (internal quotation marks omitted).  Contrary to plaintiff's assertion, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks omitted).

Where, as here, "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010).  Probable cause to arrest exists

when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. The existence of probable cause is an objective inquiry that "is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). An arrest is lawful as long as there exists sufficient information "to provide probable cause to believe that the person arrested has committed any crime." Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

Further, a false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested. See Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986) ("Thus, the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); Corbett v. Dwyer, 345 F. Supp. 2d 237, 241 (N.D.N.Y. 2004) (Kahn, J.) ("By pleading guilty to the charges, [plaintiff] conceded that there was probable cause.").

Defendants have met their burden of proving that the arrest of Phelan on July 17, 2008, was supported by probable cause. Jane advised Reinoehl that plaintiff had recently sent her an email threatening to have her deported. She further reportedly received threatening emails from an unknown source on the same day she obtained an order of protection against plaintiff. Jane and defendant Leonard both had personal familiarity with Phelan and identified him as the man pictured and listed as the president of an organization that named Jane as an illegal immigrant on its website. When defendants executed a valid search warrant, plaintiff admitted to emailing a complaint, under a fictitious name, to the

Governor's office accusing Jane of being an illegal immigrant and requesting that she be arrested and deported.  This complaint was sent after Jane had an order of protection against him.  This reasonably trustworthy information was sufficient to warrant a person of reasonable caution in the belief that Phelan had violated the order of protection, harassed Jane, and filed a false report.  Moreover, it is undisputed that plaintiff was ultimately convicted of the crimes for which he was arrested on July 17, 2008, and the conviction was upheld on appeal.  See Phelan, 82 A.D.3d at 1282.

Accordingly, defendants' motion for summary judgment will be granted as to the false arrest cause of action.

## 2. Excessive Force

Phelan next alleges defendants used excessive force while detaining and arresting him on July 17, 2008.  Specifically, he alleges that immediately upon entering his apartment, defendants tackled him, placed their feet and knees on his back, and forcibly twisted his arms behind his back to handcuff him.  Defendants argue that they used reasonable force under the circumstances.

Where, as here, police officers are executing a valid search warrant, they have "the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705, 101 S. Ct. 2587, 2595 (1981).  The additional intrusion of detaining an occupant is justified by three legitimate law enforcement interests: "preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search." Muehler v. Mena, 544 U.S. 93, 98, 125 S. Ct. 1465, 1469 (2005) (internal quotation marks omitted).  Inherent in this authorization "is the authority to use reasonable force to effectuate the detention." Id. at

98–99, 125 S. Ct. at 1470.

Police officers' use of force violates the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989)).  When making this reasonableness determination, courts are to consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 109 S. Ct. at 1872.  An unreasonable use of force violates the Fourth Amendment even if it does not result in "permanent or severe" injury.  Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).  However, the lack of injury or medical treatment may weigh on the mind of the fact finder when determining the reasonableness of the force applied.  Id.  Indeed, a "de minimis use of force will rarely suffice to state a Constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

Viewing the facts in the light most favorable to Phelan, defendants broke down the door to his apartment without warning, tackled him to the ground, placed their feet and knees on his back, twisted his arms behind his back, and handcuffed him.  Plaintiff claims that he never attempted to flee, denies that any weapons were located within his reach,[4] and disputes defendants' assertion that he has a history of violence toward arresting police officers.  However, it is undisputed that the officers were executing a valid search warrant of

---

[4]  However, Reinoehl's July 31, 2008, police memorandum indicates that plaintiff admitted to keeping a knife "in the bedroom, a few in the front room and my swords in the computer room."  Reinoehl Decl., Ex. A, 7 (The pagination corresponds to the page numbers as assigned on CM/ECF.).

plaintiff's home.  They therefore had the inherent authority to detain him while they searched the premises.  There is nothing in the record from which to infer that defendants used an unreasonable amount of force to effectuate this detention.  The force used was instead de minimis.  Moreover, plaintiff does not allege that he was injured in any way, was detained for an excessive period of time, or required any medical treatment whatsoever.  In short, the force used by defendants to detain and arrest plaintiff on July 17, 2008, was objectively reasonable, and no reasonable finder of fact could conclude otherwise.  See Paul v. City of Rochester, 452 F. Supp. 2d 223, 227 (W.D.N.Y. 2006) (holding, as a matter of law, that defendant officers executing a search warrant did not use unreasonable force when they ordered an innocent bystander to lay on his stomach, handcuffed him, and stepped on his knee and back, causing injuries).

Accordingly, defendants' motion for summary judgment will be granted as to the excessive force cause of action.

### 3.  Illegal Seizure of Property

Finally, plaintiff alleges defendants illegally seized personal property that was not listed on the search warrant.[5]  He also alleges that his signature on a voluntary consent form, which provided the officers with permission to search the entire premises for additional specified items, is a forgery.  Plaintiff does not challenge the validity of the search warrant. Defendants argue that any cause of action challenging the seizure of items pursuant to the search warrant on July 17, 2008, is barred by the decision of the Albany County Court judge

---

[5]  Plaintiff also attempted to frame this claim as a deprivation of due process.  However, that cause of action was addressed, and dismissed, in Judge Baxter's Report–Recommendation.  See Phelan, 2010 WL 2948217, at *6–7 (due process claims precluded because adequate post-deprivation remedies were available to plaintiff, including a motion to suppress in the criminal proceedings and a civil action for replevin).

following a suppression hearing that occurred during the criminal proceedings.

While it is unclear which statements and evidence plaintiff specifically sought to have suppressed prior to his criminal trial in state court, it is undisputed that a suppression hearing was held and the judge denied plaintiff's motion.[6]  Therefore, plaintiff already had a full and fair opportunity to litigate any claim that his personal property was seized in violation of the Fourth Amendment.  He cannot now re-litigate such claims.  See Hayes v. Cnty. of Sullivan, __ F. Supp. 2d __, 2012 WL 1129373, at *17 (S.D.N.Y. 2012) (collecting cases that have held a previous suppression hearing in state court bars a subsequent § 1983 unlawful search claim on collateral estoppel grounds, and also precludes any similar claim regarding evidence plaintiff could have sought to suppress on res judicata grounds).

Accordingly, defendants' motion for summary judgment will be granted as to the illegal seizure of property cause of action.

### C.  Plaintiff's Cross-Motion for Summary Judgment

As defendants' motion for summary judgment will be granted in its entirety and the complaint will be dismissed with prejudice, plaintiff's cross-motion for summary judgment will be denied as moot.

## IV.  CONCLUSION

The arrest of Phelan on July 17, 2008, was supported by probable cause, and he was ultimately convicted of the crimes for which he was arrested on that date.  His conviction was

---

[6]  Although the parties do not provide much detail on the pretrial hearings, it appears that at least a Huntley and Wade hearing was held.  See Phelan, 82 A.D.3d at 1282.  In denying plaintiff's claim that he received ineffective assistance because his trial counsel withdrew his suppression motions, the Appellate Division noted, "the evidence adduced at the Huntley and Wade hearing fails to reveal any likelihood of success of a challenge to the admissibility of his statements to police or the evidence seized from his residence pursuant to the search warrant."  Id.  The court further noted that "the record reveals no colorable factual or legal basis for suppression."  Id.

upheld on appeal.  Defendants used an objectively reasonable amount of force to detain

plaintiff while they executed a valid search warrant of his residence.  Finally, plaintiff had a

full and fair opportunity during the criminal proceedings in state court to litigate any claim that

defendants violated the Fourth Amendment by seizing personal property that was outside the

scope of the search warrant.

Therefore, it is

ORDERED that

1.  Defendants' motion for summary judgment (Dkt. No. 40) is GRANTED;

2.  The complaint (Dkt. No. 1) is DISMISSED in its entirety with prejudice; and

3.  Plaintiff's cross-motion for summary judgment (Dkt. No. 46) is DENIED as moot.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly.

United States District Judge

Dated:  August 28, 2012
        Utica, New York.